**The STATE of Ohio, Appellee,**

v.

**GLASURE, Appellant.**

[Cite as *State v. Glasure* (1999), 132 Ohio App.3d 227.]

Court of Appeals of Ohio,
Seventh District, Carroll County.

No. 665.

Decided Feb. 2, 1999.

228

*John T. Smiley,* Carroll County Prosecuting Attorney, and *Donald R. Burns, Jr.,* Assistant Prosecuting Attorney, for appellee.

*Robert D. Head,* Carroll County Assistant Public Defender, for appellant.

VUKOVICH, Judge.

John A. Glasure, appellant, appeals his conviction of defrauding creditors, in violation of R.C. 2913.45(A)(1), a misdemeanor of the first degree. For the following reasons, the judgment of the Carroll County Court is reversed and this cause is remanded.

## I. FACTS

On August 19, 1994, a complaint was filed against appellant, charging him with violation of R.C. 2913.45(A)(1) and alleging that he had defrauded creditors. He

was subsequently arraigned, entered a plea of not guilty, and requested court-appointed counsel. Attorney William McLane from the Public Defender's Office was appointed as trial counsel via the court's September 13, 1994 judgment entry. Due to problems between Attorney McLane and appellant, which were brought to the attention of the trial court, Attorney McLane was excused as counsel as of June 26, 1995, and Attorney John Gartrell was appointed to take his place. Despite the fact that counsel had been provided for appellant, he chose to file numerous *pro se* motions and requests during the period of time leading up to trial.

Subsequently, on September 11, 1995, Attorney Gartrell filed a motion to withdraw as counsel, as appellant had failed to attend three scheduled appointments that had been established for the purpose of preparing his case for trial. The court issued hearing notices on the motion to all parties, including appellant.

On September 28, 1995, a hearing on Gartrell's motion to withdraw was held, but appellant failed to appear. The court heard testimony from Gartrell, who explained that he had met with appellant when he was first appointed, but that appellant had failed to appear for three scheduled appointments after their initial meeting. In fact, Gartrell advised the trial judge that he sent a letter to appellant rescheduling the appointment for a third time and warned appellant that he would file a motion to withdraw from the case if he failed to keep the appointment. Gartrell also indicated to the court that he had all of the discovery completed for trial. Moreover, at the hearing on Gartrell's motion to withdraw, the assistant prosecuting attorney brought to the court's attention that appellant had failed to show the court that he was entitled to court-appointed counsel.

In its October 4, 1995 entry regarding the motion to withdraw the trial court stated:

"The Court having heard from all parties present, orders that the motion of counsel for defendant to withdraw be held in abeyance. The Court further directed that the Clerk of Courts cause an affidavit and financial statement to be served upon defendant John A. Glasure personally by the Sheriff of Carroll County, Ohio, said affidavit and financial statement to be provided by the office of the Joint County Public Defender's Office. For the reason that the defendant has failed to provide the Public Defender's Office with the required affidavit and financial statement to determine his eligibility for Court appointed counsel, the Court orders that defendant John A. Glasure complete the financial statement and affidavit in its entirety, execute the same, and return it to the Court within ten (10) days of service upon him. Upon receipt of the information, the Court will rule upon the motion before it."

On October 6, 1995, the court's entry and the appropriate affidavit of indigency and financial statement forms were personally served upon appellant by the

Carroll County Sheriff's Department. However, the court never received the completed documents from appellant. Accordingly, on October 23, 1995, the court issued another judgment entry, in which it noted:

"The Defendant having failed to establish his eligibility for court appointed counsel, the Court hereby discharges the Public Defender's Office from representing, any further, the Defendant."

This entry was again personally served upon appellant on October 25, 1995, thereby notifying appellant that no one from the Public Defender's Office would be representing him in the trial scheduled to occur fourteen days later.

On November 8, 1995, appellant appeared in court for the scheduled trial. That morning, appellant filed several *pro se* motions. One motion read as follows:

"Under OROC [*sic*] DR 2–110[A][2] Withdrawal from Employment * * *, Defendant's counsel has left without delivering to John A. Glasure all papers and property to which he is entitled to and John A. Glasure was not given time for employment of other counsel of his choice. This is in violation of my Civil and Constitutional Rights."

During a discussion prior to trial, appellant admitted that he never requested that his counsel return "papers and property" mentioned in his motion. He stated that he presumed that counsel would automatically turn those documents over to him.

Immediately prior to the commencement of trial, the court advised appellant that he had the right to counsel and that counsel was "of the utmost importance." However, due to the fact that appellant failed to provide the court with the affidavit of indigency and the financial statement to determine whether he qualified for the service of the Public Defender, the court had to discharge the Public Defender's Office. Furthermore, the trial court judge asked appellant whether he understood how important it was to have an attorney, to which appellant replied, "Absolutely." Appellant began to tell the court that he did not trust his two prior attorneys and that he did not fill out the affidavit of indigency and the financial statement because he had already given a statement to the court that he had no income after a drunk driver hit his truck and he could no longer work. He also stated that he had not attempted to secure an attorney because he had no money to hire one. The trial court judge specifically asked appellant whether he wished to waive his right to counsel, and appellant replied, "No. I never waived my right to have counsel."

Even though appellant was not represented by counsel, the court decided to proceed with the trial after the following colloquy took place:

"THE COURT: Mr. Glasure, I believe that your entire conduct through this complaint which was filed back in August of 1994 has been one to frustrate the Court and delay this matter coming to fruition and a final conclusion. I have bent over backwards to be patient. I have appointed two attorneys. I have attempted in every way to make sure that you had the legal representation that you were entitled to. You did not cooperate with the two attorneys. They both requested to be relieved. I asked that you fill out the proof that you were entitled to counsel and you refused to cooperate. At this point in time we are going forward today with the jury trial, who we have summoned and who is here.

"MR. GLASURE: Fine. And I'm going to object to the whole proceedings because I cannot present a proper defense. The think [*sic*] is, I have no idea of what I'm tryin' to defend. The complaint does not clearly state who the creditor is. I have absolutely no idea of what I'm goin' up agin [*sic*]."

After the trial, the jury returned a guilty verdict on the charged offense. As a result, appellant was sentenced to six months' incarceration and fined $1,000. The trial court entered its judgment levying the sentence on December 15, 1995. Appellant made timely appeal from this judgment on December 18, 1995.

## II. ASSIGNMENT OF ERROR

Appellant presents a single assignment of error for this court's review, which reads:

"The trial court erred in refusing to appoint counsel to represent appellant thereby depriving appellant of his right to counsel under the Sixth and Fourteenth Amendments to the United States Constitution; Section 10, Article I of the Ohio Constitution; and Crim.R. 44."

Appellant phrases the issue presented to the court as follows:

"When a defendant in a criminal case is indigent, cannot afford to hire counsel, requests the appointment of counsel, and asserts his right to counsel does the court err in refusing to appoint counsel?"

The crux of appellant's argument is that he never waived his right to counsel. Appellant cites *Johnson v. Zerbst* (1938), 304 U.S. 458, 462–463, 58 S.Ct. 1019, 1022–1023, 82 L.Ed. 1461, 1465–1466; *Argersinger v. Hamlin* (1972), 407 U.S. 25, 92 S.Ct. 2006, 32 L.Ed.2d 530; and *Gideon v. Wainwright* (1963), 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799, for the proposition that the Sixth Amendment guarantee is fundamental and is a requirement for anyone accused of a crime who stands in jeopardy of life or liberty. Moreover, appellant argues that although a defendant has the ability to represent himself, any waiver of the right to counsel must be made voluntarily, knowingly, and intelligently. *Patterson v. Illinois* (1988), 487 U.S. 285, 108 S.Ct. 2389, 101 L.Ed.2d 261; *Edwards v. Arizona* (1981),

451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378. Appellant uses the Supreme Court of Ohio's decision in *State v. Gibson* (1976), 45 Ohio St.2d 366, 74 O.O.2d 525, 345 N.E.2d 399, and the language of Crim.R. 44 to give credence to his argument. Appellant also claims that assuming there was a waiver, the court should have obtained it in writing pursuant to Crim.R. 2(C) and as is delineated in Crim.R. 44(C).

Appellant alleges that the trial court had a duty to explain the difficulties of trying a case *pro se,* which never occurred. Moreover, appellant claims that the court had a duty to inquire during a full and complete hearing as to whether appellant could have afforded counsel. Appellant states that there is no case law to establish that the completion of an affidavit of indigency and a financial statement is a prerequisite to determine whether a defendant is eligible for court-appointed counsel.

The state of Ohio (appellee) argues that appellant was explained his constitutional right to counsel and two different attorneys were appointed to him. However, due to appellant's failure to cooperate, appointed counsel had to be dismissed. Moreover, appellee states that by appellant's own actions in not cooperating with counsel and by not providing the court with the proper documentation to establish his indigency, he waived his right to counsel. Appellee cites R.C. 120.05, which explains the process by which indigency is established. Appellee states that appellant failed to disclose his financial status as is required by R.C. 120.05, which, in essence, equated to a waiver of his right to counsel as he knew he was obligated to prove he was indigent through financial disclosure. In support of its argument, appellee cites a United States Court of Appeals case, *United States v. Sarsoun* (C.A.7, 1987), 834 F.2d 1358, wherein the court held that the defendant waived his right to counsel by failing to submit a financial affidavit and by failing to answer a judge's questions about his income. Appellee also cites *United States v. Kaufman* (C.A.4, 1971), 452 F.2d 1202, and *United States v. Ellsworth* (C.A.9, 1976), 547 F.2d 1096, for the proposition that a defendant is not entitled to court-appointed representation when he fails to demonstrate that he was unable to afford private counsel through the execution of an affidavit of financial status to establish his indigency.

Appellee further argues that appellant had notice of Gartrell's motion to withdraw as counsel on or about September 11, 1995, and that he filed several *pro se* motions during that two-month period. Therefore, appellant, as appellee contends, never indicated a desire or need for counsel after he received the motion to withdraw as counsel. Appellee cites *State v. Hook* (1986), 33 Ohio App.3d 101, 514 N.E.2d 721, in support of its claim that when a defendant fails to take action to obtain counsel prior to the day of trial and requests a continuance in order to delay the trial, the trial court may be permitted to infer a waiver of

the right to counsel. In summary, appellee argues that appellant waived his right to counsel due to the fact that he refused to cooperate with both of his appointed attorneys, refused to appear in court for the hearing to discuss the withdrawal of his second appointed counsel, failed to present the court with the appropriate financial statement and affidavit of indigency, and did not appear with counsel at trial when he had time to retain an attorney.

## III. DISCUSSION

Essentially, appellant raises three arguments with respect to his assignment of error. First, he argues that he never waived his right to counsel, which is a right guaranteed by the Sixth Amendment. Second, appellant asserts that the court had a duty to explain the difficulties of trying a case *pro se*. Third, the court had a duty to determine whether appellant could actually afford counsel. Appellee's counterargument is that there was an implied waiver of counsel based on two main facts. First, appellee argues that appellant was fully apprised of his constitutional right to counsel and two attorneys were appointed to represent him, but he failed to cooperate with them. Second, appellant failed to provide the court with the financial statement and affidavit of indigency to establish that he was entitled to court-appointed counsel. It is first necessary to discuss the basic law governing a waiver of counsel and then to discuss the effect of failing to submit an affidavit of indigency and financial statement to the court.

## A. WAIVER OF COUNSEL

It is axiomatic that a criminal defendant has a right to counsel pursuant to the Sixth and Fourteenth Amendments to the United States Constitution and Section 10, Article I of the Ohio Constitution. However, this right can be waived either expressly or impliedly from the circumstances of the case. *State v. Weiss* (1993), 92 Ohio App.3d 681, 637 N.E.2d 47. To be an effective waiver, it is necessary for the trial court to "make sufficient inquiry to determine whether [the] defendant fully understands and intelligently relinquishes that right." *State v. Gibson* (1976), 45 Ohio St.2d 366, 74 O.O.2d 525, 345 N.E.2d 399, at paragraph two of the syllabus. Therefore, the court must be satisfied, before concluding that there has been a waiver, that the defendant made an intelligent and voluntary waiver with the knowledge that he will have to represent himself, and also, that there are dangers inherent in self-representation. *State v. Ebersole* (1995), 107 Ohio App.3d 288, 293, 668 N.E.2d 934, 937, citing *Faretta v. California* (1975), 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 and *Gibson, supra.*

In *Gibson*, the Supreme Court of Ohio applied the test set out in *Von Moltke v. Gillies* (1948), 332 U.S. 708, 68 S.Ct. 316, 92 L.Ed. 309. In *Von Moltke*,

the court established the requirements for a sufficient pretrial inquiry by the trial court with respect to a waiver. The court stated:

"To be valid such waiver must be made with an apprehension of the nature of the charges, the statutory offenses included within them, the range of allowable punishments thereunder, possible defenses to the charges and circumstances in mitigation thereof, and all other facts essential to a broad understanding of the whole matter. A judge can make certain that an accused's professed waiver of counsel is understandingly and wisely made only from a penetrating and comprehensive examination of all the circumstances under which such a plea is tendered." *Id.,* 332 U.S. at 724, 68 S.Ct. at 323, 92 L.Ed. at 321.

 It has been stated that "[s]uch an inquiry must be made, even when the defendant is seemingly engaging in delay tactics, because such a delaying strategy by the defendant is often employed where the defendant does not understand the crucial role of counsel in criminal cases." *Weiss, supra,* 92 Ohio App.3d at 685, 637 N.E.2d at 50, citing *United States v. Allen* (C.A.10, 1990), 895 F.2d 1577, 1579. However, if the defendant continues with his "cat and mouse" game with the court, the court is entitled to proceed to trial with the knowledge that the defendant knows the gravity of his decision to proceed *pro se. Id.* at 685–686, 637 N.E.2d at 50, citing *United States v. McMann* (C.A.2, 1968), 386 F.2d 611, 618–619.

In addition to case law establishing that the court must ensure that a waiver is knowing and intelligent, Crim.R. 44 deals with the assignment of counsel and waiver of counsel. The relevant sections read as follows:

"(B) Counsel in petty offenses. Where a defendant charged with a petty offense is unable to obtain counsel, the court may assign counsel to represent him. When a defendant charged with a petty offense is unable to obtain counsel, no sentence of confinement may be imposed upon him, unless after being fully advised by the court, he knowingly, intelligently, and voluntarily waives assignment of counsel.

"(C) Waiver of counsel. Waiver of counsel shall be in open court and the advice and waiver shall be recorded as provided in Rule 22."

 The Third Appellate District has held that strict compliance with the procedural rule of Crim.R. 44 is not necessary, so long as the substance and spirit of that rule have been followed. *Ebersole, supra,* 107 Ohio App.3d at 293, 668 N.E.2d at 937, citing *State v. Overholt* (1991), 77 Ohio App.3d 111, 601 N.E.2d 116. Accordingly, if the record reflects substantial compliance with the procedural rule, the waiver is deemed to have been implied. *Id.*

As stated above, the waiver of one's right to counsel can be implied. However, even where the waiver of counsel is implied, there must be a pretrial inquiry as to the waiver of the right to counsel. See *Allen, supra,* 895 F.2d at 1579. An example of an implied waiver is found in the facts of *Hook, supra,* 33 Ohio App.3d at 103, 514 N.E.2d at 723–724, wherein the court held that the right to have counsel of one's own choice may be deemed to be waived by a defendant who is financially able but fails to retain counsel in an attempt to delay or otherwise frustrate the judicial process. In *Hook,* the court acknowledged that our judicial system has "recognized the principle that even the intelligent and educated layman has minimal or sometimes no skill in the science of the law." *Id.* at 103, 514 N.E.2d at 723, citing *Powell v. Alabama* (1932), 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158. To infer a waiver, the court must take into account the total circumstances of the individual case including the background, experience, and conduct of the accused person. *Id.,* citing *Johnson,* 304 U.S. at 464, 58 S.Ct. at 1023, 82 L.Ed. at 1466, and *Ungar v. Sarafite* (1964), 376 U.S. 575, 84 S.Ct. 841, 11 L.Ed.2d 921. The facts of the *Hook* case are distinguishable from the facts in the instant case because the court in *Hook* found that the defendant was not inexperienced with the judicial system or that case in particular since it had already been tried, but the cause was remanded to the trial court after it was determined that the jury had been prejudiced in the first trial. It was clear that the defendant was aware of the nature of the charges, the possible defenses, and the evidence the state would present. That is not true of the facts in the case at issue. The defendant in *Hook* also had two and a half months to obtain counsel and was aware that he was required to retain an attorney. The court also indicated that it would allow counsel to appear on behalf of the defendant after the trial began.

In a case more analogous to the case at bar, *Weiss, supra,* 92 Ohio App.3d 681, 637 N.E.2d 47, the court noted that there was nothing in the record to indicate that the trial court had made any attempt to inform the defendant of the gravity of his decision to proceed to trial without counsel. The court evidently informed the defendant prior to trial that, if he showed up in court without representation, he would not be granted a further continuance and would be required to proceed *pro se.* It was not clear from the record that the defendant knew the ramifications of that threat. The appellate court stated that "[i]f he had known the possible consequences of proceeding without an attorney, perhaps he would have made a greater attempt to obtain one before trial." The *Weiss* court concluded:

"The trial court, when faced with the circumstances of this case, should have made an inquiry, as set forth in *Von Moltke,* into Weiss' understanding of the ramifications of proceeding without an attorney. If Weiss still stated that he wanted an attorney, a further continuance should have been granted, informing

Weiss that this would be the last continuance. If Weiss then appeared in court without representation, the court could proceed with trial, knowing that Weiss knew that he would be required to proceed *pro se* and also knew the possible consequences of being required to represent himself." *Id.,* 92 Ohio App.3d at 686, 637 N.E.2d at 50.

## B. SUBMISSION OF AFFIDAVIT OF INDIGENCY AND FINANCIAL STATEMENT

It is also important to discuss appellee's assertion regarding appellant's failure to submit the financial statement and affidavit of indigency as was requested by the court. Appellee cites *Sarsoun,* 834 F.2d 1358, and *Ellsworth,* 547 F.2d 1096, in support of its position. It is important to note that the facts in the cases cited by appellee are distinguishable from the facts of the case *sub judice.* For instance, in *Sarsoun,* the defendant was convicted for failure to file income tax returns and filing a false withholding statement. He refused to accept court-appointed counsel, but asked the court to appoint laypersons from Utah, Idaho, and Connecticut to assist him at trial. The judge explained at length the difficulties and disadvantages of self-representation. The defendant was before the court on several occasions and was always encouraged to retain an attorney. He was told that he could not receive lay assistance at government expense, so the defendant agreed to seek appointment of counsel by filing the appropriate Criminal Justice Act ("CJA") form. After that point, the defendant continued to appear in court without counsel and did not fill out the CJA form. Ultimately, the case went to trial and the defendant proceeded *pro se* after the judge told the defendant that he had repeatedly refused to disclose the requisite financial information. As a result, he effectively waived his right to counsel.

The *Sarsoun* court stated that the trial court still had a duty to make an appropriate inquiry into the defendant's financial condition even though the burden of proving an adequate financial means lies with the defendant. The appellate court found that the trial court appropriately conducted the inquiry into the defendant's financial resources. *Id.,* 834 F.2d at 1361–1362. The *Sarsoun* case is distinguishable because it dealt with a federal court case in which the Criminal Justice Act applied. Moreover, it was clear that the appropriate inquiries had been made into the defendant's financial status and that there were numerous warnings issued to the defendant prior to the court's concluding that he had waived his right to counsel. Likewise, *Ellsworth* dealt with the failure of the defendant to file with the court the appropriate CJA form. That court also found that the defendant was well aware of his burden of proof and of the court's requirements and the consequences. Moreover, the defendant in the *Ellsworth* case was an educated, sophisticated defendant who showed an "extraordinary

understanding of the law for a lay person," as did the quality of his *pro se* defense at trial. *Id.* at 1098.

## C. ANALYSIS

■ Certainly, there is the need for the efficient and effective administration of criminal justice. However, a defendant's basic right to counsel must be considered along with that need. *Hook*, 33 Ohio App.3d at 103, 514 N.E.2d at 723–724. In the instant case, the record does not indicate that appellant was made aware of the consequences of his failure to submit the financial statement and affidavit of indigency to the trial court. Rather, in the court's judgment entry dated October 23, 1995, appellant was merely notified that the Public Defender's Office was discharged from representing him. It did not notify appellant that no other counsel would be appointed for him, nor did it specify the gravity of his actions in failing to establish his eligibility for court-appointed counsel.

■ The right to assistance of court-appointed counsel in criminal cases is a factual issue in Ohio that does not necessarily depend on the defendant's indigency or whether he or she *should be able* to employ counsel, but on whether, in fact, the defendant is *unable* to employ counsel. *State v. McLean* (1993), 87 Ohio App.3d 392, 622 N.E.2d 402; see, also, *State v. Tymcio* (1975), 42 Ohio St.2d 39, 71 O.O.2d 22, 325 N.E.2d 556. Accordingly, unlike the federal cases cited by appellee with respect to the CJA form, the court in the case *sub judice* was required to delve into whether appellant was actually unable to employ counsel. A hearing on the matter likely would have rendered the completion of the indigency forms irrelevant.

The record is also void of any evidence suggesting that the court conducted a sufficient pretrial inquiry using the *Von Moltke* requirements to notify appellant of the nature of the charges against him as well as the consequences of his actions before concluding that he had impliedly waived his right to counsel. At the very least, the trial court should have informed appellant in its final judgment entry that he was required to retain counsel unless he established that he could not employ an attorney and that the court would infer a waiver of counsel if he did not comply with the court's order. Moreover, the court could have, on the day of trial, granted appellant additional time to obtain an attorney after completing the proper pretrial inquiries on the record so as to ensure that appellant was aware of the consequences of his actions. If he still after that point did not file something with the court indicating that he was unable to employ counsel, then the court properly could have inferred a waiver of counsel.

As such, this court holds that the trial court must hold a hearing in order to inquire into appellant's ability to retain counsel. After said inquiry, if the court determines that in fact appellant is indigent, the court must then inquire into whether appellant desires to have counsel appointed for him. In the event appellant chooses to proceed *pro se,* the court shall establish on the record consistent with *Von Moltke,* 332 U.S. 708, 68 S.Ct. 316, 92 L.Ed. 309, that appellant is thoroughly apprised of the pitfalls of self-representation.

In the event appellant is indigent and does request appointed counsel, the trial court may avoid the delays and difficulties experienced with the initial court appointments by reinforcing upon appellant that an indigent defendant does not have a right to counsel of his own choosing. *Thurston v. Maxwell* (1965), 3 Ohio St.2d 92, 93, 32 O.O.2d 63, 64, 209 N.E.2d 204, 205. What is constitutionally required is that all indigent individuals be provided competent counsel. The right to competent counsel *does not* require that a criminal defendant develop and share a "meaningful relationship" with his attorney. *Morris v. Slappy* (1983), 461 U.S. 1, 13, 103 S.Ct. 1610, 1617, 75 L.Ed.2d 610, 620–621. Only in the most extreme of circumstances should appointed counsel be substituted. Merely because appointed counsel's trial tactics or approach may vary from that which appellant views as prudent is not sufficient to warrant the substitution of counsel. The trial court should interfere with trial tactics or representation of a client only to protect the individual from ineffective assistance of counsel. *State v. Hill* (1996), 75 Ohio St.3d 195, 212, 661 N.E.2d 1068, 1083–1084.

Accordingly, appellant's assignment of error is meritorious and the judgment of the trial court is reversed and this cause is remanded for further proceedings according to law and consistent with this court's opinion.

*Judgment reversed
and cause remanded.*

WAITE, J., concurs.

Cox, J., concurs separately.

Cox, Judge, concurring.

I concur in the decision reached by the majority in this case but write separately to emphasize the tension between appellant's failure to cooperate with the trial court and his constitutional right to counsel. The trial court in this case did "bend over backwards" to be patient and accommodate appellant. Conversely, appellant failed to attend scheduled appointments with his second court-appointed counsel, failed to appear at a hearing regarding said appointed counsel's motion to withdraw, and failed to complete the affidavit of indigency and

financial statement as ordered by the trial court. After the trial court granted the motion to withdraw presented by appellant's second court-appointed counsel, appellant appeared at trial unrepresented and stated on the record that he was not waiving his right to counsel.

I can certainly appreciate the trial court's frustration over the actions of a vexatious litigant such as appellant. It appears to me that a judge must almost assume the responsibility of acting as an attorney, as well as a judge, for a litigant who has no counsel present at the time of trial, which frustrates the judicial process in itself. Notwithstanding all that the trial court did in this case to assist appellant, the law is clear and I am compelled to agree with the majority that the trial court must nonetheless adhere to the strict requirements and rights afforded a defendant by the Constitution.