{¶ 1} In this timely appeal the State of Ohio ("Appellant") challenges the judgment entered by the Columbiana County Court of Common Pleas granting Gregory S. Kiger's ("Appellee") motion to suppress a 1996 conviction for domestic violence. In doing so, the trial court held that Appellant could not use the 1996 conviction to enhance Appellee's current domestic violence charge from a misdemeanor to a felony. The court held that the no contest plea on which the 1996 conviction was based was entered without assistance of counsel and that Appellant had not made a knowing and intelligent waiver of the right to counsel. For the following reasons, we affirm the judgment of the trial court.
 {¶ 2} On March 28, 2001, the Columbiana County grand jury issued a secret indictment charging Appellee with domestic violence in violation of R.C. § 919.25(A). This charge stems from a March 15, 2001 incident, during which Appellee allegedly struck his wife in the nose, face and head. (Bill of Particulars, May 14, 2001). That charge, normally a misdemeanor, was enhanced to a felony of the fifth degree under R.C. § 2919.25(D) based on a 1996 conviction Appellee incurred, also for domestic violence involving his wife, after pleading no contest.
 {¶ 3} On June 28, 2001, Appellee filed a motion in limine seeking to bar the state from using the 1996 conviction to enhance the domestic violence charge from a misdemeanor to a felony. Appellee alleged that the guilty plea that prompted the 1996 conviction was unconstitutional and therefore invalid. Appellee argued that he did not have legal representation at the time he entered the plea, and that the court accepted his plea without first determining whether he knowingly, intelligently, and voluntarily waived his right to counsel.
 {¶ 4} In an order entered on September 13, 2001, the trial court granted Appellee's motion in limine, thereby precluding the prosecution from using Appellee's 1996 conviction to enhance his current case. The trial court acknowledged that Appellee had executed a document entitled "Waiver of Jury Trial and Counsel, " but also noted the absence of meaningful dialogue between the court and Appellee regarding his right to counsel. (Judgment Entry, Sept. 13, 2001, p. 2).
 {¶ 5} After reviewing the transcripts of the proceedings that led to Appellee's waiver of counsel and guilty plea, the trial court then observed that, "[a]t no point during either proceeding did the Court advise the defendant that he had the right to counsel and that if he was indigent, counsel would be appointed for him, if he so desired." (Judgment Entry, Sept. 13, 2001, p. 6). Ultimately, the court sustained Appellee's motion in limine, observing as follows:
 {¶ 6} "While this Court has the highest respect for the hard work of Trial Judges and the volume of cases which require processing, this Court's higher duty must be to the dictates of Supreme and Appellate tribunals whose requirements are aimed at assuring that every Defendant, as a result of meaningful dialogue with the Court, is fully advised of his rights under law. Only then can it be found that the same had been intelligently, voluntarily, and knowingly waived. Although the question is closer in this case than in some, this Court cannot so find under the facts presented here." (Judgment Entry, Sept. 13, 2001, p. 7).
 {¶ 7} On September 19, 2001, certifying that it was unable to prosecute due to the trial court's ruling, Appellant filed a timely Notice of Appeal from the trial court's decision.
 {¶ 8} In this Court Appellant maintains the following:
 {¶ 9} "THE TRIAL COURT ERRED AS A MATTER OF LAW WHEN IT SUSTAINED APPELLEE'S MOTION IN LIMINE, FINDING THAT APPELLEE DID NOT KNOWINGLY, VOLUNTARILY AND INTELLIGENTLY WAIVE HIS RIGHT TO COUNSEL IN COLUMBIANA COUNTY SOUTHWEST AREA COURT CASE NUMBER 96-CRB-202."
 {¶ 10} Appellant maintains that the trial court should have allowed the prosecution to use Appellee's 1996 domestic violence conviction to enhance the current domestic violence case from a misdemeanor to a felony because the record reflects that Appellee entered a valid waiver of his right to counsel in the 1996 case. After reviewing the record, we disagree with Appellant and affirm the trial court's decision.
 {¶ 11} Although couched as a motion in limine, Appellee's motion, arguing that his uncounseled domestic violence conviction should not be used to enhance his current charge from a misdemeanor to a felony, was really a motion to suppress evidence of Appellee's 1996 conviction. Where a ruling on a motion to suppress is supported by competent, credible evidence, this Court has no authority to disturb the ruling. State v.Culberson, (2001), 142 Ohio App.3d 656, 660, 756 N.E.2d 734; citing Statev. Sharpe (June 30, 2000), 7th Dist. No. 99 CA 510; and State v. Lloyd
(1998), 126 Ohio App.3d 95, 100, 709 N.E.2d 913. While accepting that the facts as found by the trial court are true, this Court must further ascertain, "* * * as a matter of law, without deference to the trial court, whether the facts meet the legal standards * * *" applicable to the case. State v. Brown (1996), 116 Ohio App.3d 477, 481, 688 N.E.2d 568.
 {¶ 12} The right to be represented by counsel originates in theSixth Amendment to the United States Constitution and is made applicable to the states through the Fourteenth Amendment. Absent a valid waiver, no person may be imprisoned for any offense, whether a misdemeanor or a felony, where there exists the potential for imprisonment unless represented by counsel. Scott v. Illinois (1979), 440 U.S. 367, 374,99 S.Ct. 1158, 59 L.Ed.2d 383; Argersinger v. Hamlin (1972), 407 U.S. 35,37, 92 S.Ct. 2006, 32 L.Ed.2d 530; and State v. Brandon (1989),45 Ohio St.3d 85, 543 N.E.2d 501.
 {¶ 13} The right to counsel applies even in petty misdemeanor cases involving an entirely suspended sentence or probation. Alabama v.Shelton (2002), 535 U.S. 654, 122 S.Ct. 1764, 152 L.Ed.2d 888. Where, however, the record reflects that the defendant, after being fully advised of the right to counsel, voluntarily and intelligently relinquished the right, it will be deemed waived. State v. Carrion
(1992), 84 Ohio App.3d 27, 616 N.E.2d 261. As the court noted inCarrion, the concern for the uncounseled, indigent defendant does not apply to an accused who voluntarily waives his right to counsel, because in those instances the defendant is asserting the parallel and equally fundamental right to self-representation. Id. at 31; citing, Faretta v.California (1975), 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562.
 {¶ 14} In Appellee's 1996 case, the record indicates that Appellee did not have a lawyer present when he pleaded no contest to charges of domestic violence. The trial court imposed a jail sentence of thirty days with twenty-three of those days suspended and probation for that violation. Given the Supreme Court's holding in Shelton, supra, and the line of cases that led to it, Appellee was undoubtedly entitled to representation. Therefore, we must examine the record to ascertain whether Appellee entered a valid waiver of his right to counsel in the 1996 case. In the absence of a valid waiver, the Sixth Amendment prohibits the prosecution from relying on the 1996 conviction to enhance his current case.
 {¶ 15} Crim.R. 44, which applies to misdemeanor offenses, provides that, "* * * [w]hen a defendant charged with a petty offense is unable to obtain counsel, no sentence of confinement may be imposed upon him, unless after being fully advised by the court, he knowingly, intelligently, and voluntarily waives assignment of counsel." Crim.R. 44(B). The rules of procedure further require that the defendant's waiver of counsel be recorded and occur in open court. Crim.R. 44(C), Crim.R. 22.
 {¶ 16} In accepting such a waiver, the trial court must, "* * * make certain that an accused's professed waiver of counsel is understandingly and wisely made [by engaging him] in a penetrating and comprehensive examination of all the circumstances under which such a plea is tendered." State v. Glasure (1999), 132 Ohio App.3d 227, 235,724 N.E.2d 1165; citing, Von Moltke v. Gillies (1948), 332 U.S. 708,724, 68 S.Ct. 316, 92 L.Ed. 309. This Court will indulge every reasonable presumption against the waiver of a fundamental constitutional right. Id. at 217, citing Brewer v. Williams (1977), 430 U.S. 387, 97 S.Ct. 1232,51 L.Ed.2d 424. Therefore, a waiver of the right to counsel will not be deemed valid unless the record reflects that the trial court substantially complied with the pertinent procedural rules. Glasure, supra; citing State v. Overholt (1991), 77 Ohio App.3d 111, 116-117,601 N.E.2d 116.
 {¶ 17} Along with his motion to bar the state's use of his 1996 conviction, the record reflects that Appellee submitted transcripts of two proceedings from the 1996 case. In opposing the motion, Appellant provided the trial court with two additional documents. Both documents are forms. The first form, dated August 28, 1996, is a one-page executed waiver of Appellee's right to jury trial and counsel. The second document is a four-page "rights form" dated June 21, 1996, which explains the misdemeanor proceedings, possible pleas and punishments, and the rights to which each defendant is entitled. The rights form includes numerous spaces on which the accused is asked to place his initials acknowledging that he has fully reviewed the form. Appellee's name is printed at the top of the form and his initials appear on each line that follows. Although Appellant signed and dated the line acknowledging that he had reviewed the document, he did not sign the form indicating a waiver of his right to counsel or jury trial.
 {¶ 18} The transcript of the June 21, 1996 arraignment, however, reflects that Appellant had no intention of waiving his right to counsel. Rather, as illustrated by the following colloquy, Appellee was chiefly preoccupied with maintaining a semblance of financial stability in the wake of the domestic violence charge and with convincing his wife to join him in counseling:
 {¶ 19} "The Court: You're not employed at this time, sir?
 {¶ 20} "Mr. Kiger: No, Sir.
 {¶ 21} "The Court: When was the last time you were employed?
 {¶ 22} "Mr. Kiger: About a week ago.
 {¶ 23} "The Court: All right.
 {¶ 24} "Mr. Kiger: I just couldn't handle work, and things — family matters. And I'm just trying to get things together, my family life, so, I couldn't do both. So, I took some time off from work.
 {¶ 25} "The Court: Where were you working at?
 {¶ 26} "Mr. Kiger: Cole Pump in Columbiana.
 {¶ 27} "The Court: How long have you been working there?
 {¶ 28} "Mr. Kiger: Fourteen months, making pretty good money, seven thirty-two an hour. Full benefits, insurance for the kids, the wife, me.
 {¶ 29} "Uh . . . the fact is we are having problems and I'm trying to get her to go to counseling with me to work these problems out.
 {¶ 30} "The Court: Well, what are you living off of now?
 {¶ 31} "Mr. Kiger: Um . . . well, I got a pay check coming, I figure if we take and sit down — if we have more time to sit down and talk things out, by the time I get my other pay check, and the money I just got with one pay check, and I got another pay check due, it's only for half a pay, but that would give us time to get things straightened out so we can take and get into some counseling down at the, maybe the Mental Health or something, and work these problems out.
 {¶ 32} "Where I can't do it when I'm working six days a week, working all afternoon turn. By the time I get home, it's two, three o'clock in the morning. Cause I work from three to whenever. I don't have no set time.
 {¶ 33} "The Court: Do you have a job to go back to, sir?
 {¶ 34} "Mr. Kiger: If I can — like I said, if uh, yeah, I'll have a job.
 {¶ 35} "I was guaranteed — Paul Rance is my boss, he said that any time I was ready to come back, Paul said, `I got a job.' But I cannot work and keep my mind straight on my job, and do my job, and have these problems at home.
 {¶ 36} "The Court: Well, with you having a job available to you, sir, and it's there —
 {¶ 37} "Mr. Kiger: — providing that they never hire nobody else in.
 {¶ 38} "The Court: Well, at this point in time I'm not going to appoint counsel to represent you. You are going to have to seek out your own legal counsel with regards to do this." (June 21, 1996, Tr. pp. 3-5).
 {¶ 39} Appellant then entered a plea of not guilty.
 {¶ 40} Nowhere in the above referenced discussion does the trial court explain the potential pitfalls Appellee might encounter should he choose to pursue his case without legal representation. Furthermore, although the court managed to elicit information from Appellee suggesting that, on a salary of seven dollars and thirty-two cents an hour he may not be able to afford private counsel, the trial court failed to inform Appellant that it could appoint an attorney for him if he was financially unable to hire one on his own.
 {¶ 41} At the next proceeding on August 28, 1996, during which Appellee decided, without benefit of counsel, to change his plea to no contest, the trial court again failed to discuss with Appellee the ramifications of proceeding without counsel. Appellant makes much of the trial court's detailed admonishments surrounding his change of plea. According to Appellant, such a dialogue reflects a knowing and intelligent waiver of counsel.
 {¶ 42} Moreover, Appellant insists, the signed waiver of counsel form and the fact that Appellee initialed the rights form provision explaining the right to counsel proves that Appellee read and understood precisely what it was he was giving up. Appellant relies on Carrion, supra, to support the proposition that Appellee's waiver was valid. As in the instant case, Carrion involved the enhancement of a domestic violence charge to a felony based on the defendant's previous conviction. The defendant in Carrion similarly challenged the enhancement, arguing that the previous conviction, based on an uncounseled plea, was invalid because the court failed to first secure a voluntary and intelligent waiver of his right to counsel prior to accepting the plea. The court disagreed and concluded that, "[n]othing in the record * * * indicate[d] that the signed waiver [wa]s faulty." Id. at 31.
 {¶ 43} Appellant stresses that when the court in Carrion found that the defendant had entered a valid waiver of his right to counsel, it limited its examination to the form that the defendant signed as evidence that his waiver was proper. According to Appellant, our examination should be similarly limited. Such a proposition misses the point. InCarrion, the court evidently concluded that the record clearly demonstrated that the defendant had waived his right to counsel. In the instant case, the trial court was not so persuaded. The trial court was troubled by the fact that the Waiver of Counsel form that Appellee signed on August 28, 1996 was really a "Waiver of Jury Trial" form to which someone at some point added the words "and Counsel."
 {¶ 44} In our examination of the waiver form that Appellee signed in the instant case we found the explanation of the right to counsel buried on the fourth page among other rights and a broad range of information concerning misdemeanor procedures and associated penalties. Beyond the initials "G.K." inscribed on virtually every line of that document, there is nothing to indicate that Appellee really understood his right to counsel.
 {¶ 45} The trial court resolved that the record failed to show that Appellee knowingly and intelligently waived his right to counsel. Since the record credibly and competently supports that decision, this Court hereby overrules Appellant's assignment of error and affirms the decision entered by the Columbiana County Court of Common Pleas.
Donofrio, J. and DeGenaro, J., concurs.