The STATE of Ohio, Appellee,

v.

McCOY, Appellant.

[Cite as *State v. McCoy,* 188 Ohio App.3d 152, 2010-Ohio-2639.]

Court of Appeals of Ohio,
Second District, Miami County.

No. 09–CA–14.

Decided June 11, 2010.

Gary Nasal, Miami County Prosecuting Attorney, and Anthony E. Kendell, Assistant Prosecuting Attorney, for appellee.

Russ B. Cope, for appellant.

RINGLAND, Judge.

{¶ 1} Defendant-appellant, Charles McCoy, appeals from his conviction and sentence for obstructing justice in violation of R.C. 2921.32(A)(5).   McCoy

contends that he was denied his right to representation by counsel at the preliminary hearing. McCoy also contends that he was denied his right to counsel under the Sixth and Fourteenth Amendments to the United States Constitution, because the trial court denied his request for substitution of counsel.

{¶ 2} We conclude that McCoy has failed to establish grounds for reversal on the issue of right to counsel at the preliminary hearing. As an initial matter, McCoy failed to file a transcript of the preliminary hearing, which leaves the appellate court with no record to review. Even if the transcript of the preliminary hearing were available, McCoy has not demonstrated how he was prejudiced by an alleged lack of counsel. McCoy also failed to file a motion in common pleas court contesting the lack of counsel at the preliminary hearing.

{¶ 3} We further conclude that the trial court did not abuse its discretion in denying McCoy's motion to substitute counsel on the morning of trial. The trial court adequately investigated McCoy's complaints, but did not find them sufficient to warrant substitution of counsel. McCoy additionally failed to establish the strong showing of good cause necessary to overcome the presumption that a request for substitution made on the day of trial is made in bad faith. Accordingly, the judgment of the trial court is affirmed.

I

{¶ 4} The following account is taken from the testimony of the state's witnesses at trial.[1] In June 2008, the Troy Police Department received a report that a suspect had robbed the Credit Union on Wayne Street in Troy, Ohio. The police were given a description of the suspect and were also told that the suspect had left the Credit Union on a bicycle, heading east. Officer Jeff Hubbard then located and pursued the suspect, but lost him in the area of 537 West Franklin Street. A city of Troy equipment operator subsequently told the police that he had seen someone who matched the description of the suspect running into a house on Franklin Street.

{¶ 5} Officer Scott Gates knocked on the door of 537 Franklin and spoke with Charles McCoy. McCoy said that no one had run into the house and that only he and his elderly mother were there. After that, McCoy came outside a few times. McCoy's brother, Robert, subsequently arrived and told the police that the suspect, Danny Pearson, was in the house. Robert asked the officers to find Pearson and remove him. When the officers approached, Charles McCoy was on

---

1. The testimony McCoy presented prior to his no-contest plea did not challenge the police testimony, other than a statement offered by Robert McCoy, which we will refer to later in our opinion.

the porch and stated that he knew where Pearson was and would go in and get him. Charles led the officers to the garage, opened up the attic door, and yelled for Pearson to come down. The officers were not able to find Pearson. At that time, Charles told the police that Pearson had left the house by the garage door. However, the door was braced, and deadbolts were on another garage door, so that Pearson would not have been able to exit the garage in that manner.

{¶ 6} After another search, Pearson was eventually located, hiding under a pile of items in the garage. According to the police, the items covering Pearson were stacked so neatly and tightly that Pearson would not have been able to do it alone. Pearson also had on a different shirt than he was wearing when he entered the residence. McCoy identified the shirt as one of his own. The shirt Pearson originally wore into the house was found under the kitchen sink in the residence, and the money from the robbery was located in McCoy's bedroom.

{¶ 7} In contrast to the state's testimony, Robert McCoy stated that his brother Charles had told the police that Pearson forced his way into the house and that Charles had left the house after that occurred. However, Robert McCoy was not present during the entire course of events and did not participate in any of the searches of the house that occurred.

{¶ 8} The state filed a complaint against McCoy in Miami County Municipal Court on a charge of obstructing justice in violation of R.C. 2921.32(A). On June 18, 2008, McCoy appeared at a preliminary hearing in municipal court and signed a written waiver of counsel. The municipal judge found probable cause to believe that McCoy had committed the alleged crime and bound McCoy over to the Miami County Court of Common Pleas.

{¶ 9} Subsequently, the Miami County Grand Jury indicted McCoy on one count of violating R.C. 2921.32(A)(5). Counsel was appointed, and McCoy entered a plea of not guilty. A jury trial on the charge began on January 21, 2009. Prior to empaneling the jury, the trial court considered McCoy's request that he be provided with another attorney. At that time, McCoy's attorney indicated that he and McCoy had some differences of opinion on matters like trial strategy and witnesses to be called. When the trial court asked McCoy about whether he wished his attorney to be relieved, the following exchange occurred:

{¶ 10} "MR. MCCOY: Yes, sir, because he won't, I mean, he tells me one thing then he tells me another thing. And I'm lost, I'm lost, and you know. And my most important witness, I told him that she was terminal when he first took this case, and she has died.

{¶ 11} "THE COURT: She has died?

{¶ 12} "MCCOY: She has died and he never did get a statement from her."[2]

{¶ 13} McCoy also complained about his attorney's failure to obtain videotapes from a television station. McCoy believed that the tapes could verify when he had talked to the police officers. In response, McCoy's attorney explained that he did not obtain the information due to past experience with the television station's vigorous defense against any attempt to recover that type of information. Finally, McCoy was upset that his attorney would allow Officer Gates to attempt to question his sister, when Gates was going to testify in the case. The prosecutor commented that McCoy's attorney had prepared well and had been in the police department weeks prior to trial looking at all the evidence and all the tapes. The prosecutor noted that he and defense counsel had had many conversations and that defense counsel had prepared as much as he could, given the state of the evidence.

{¶ 14} After the above discussion, the trial court overruled McCoy's request for new counsel. The trial proceeded, and the state called two police officers and a city worker, and the defense called two of McCoy's siblings and McCoy's niece. Trial then concluded for the day.

{¶ 15} On the second day of trial, McCoy informed the court that he wanted to withdraw his plea of not guilty and enter a no-contest plea. The trial court placed McCoy under oath, at which time the following exchange occurred:

{¶ 16} "THE COURT: Okay. Now we talked earlier before trial about the fact that you were dissatisfied with your Attorney and you wanted him to subpoena Steve Baker and his tv tapes and so forth, right?

{¶ 17} "MR. MCCOY: Yes.

{¶ 18} "THE COURT: Okay. Since that time that you've wanted to fire your Attorney, have you been satisfied with your Attorney and his performance?

{¶ 19} "MR. MCCOY: Yes, sir.

{¶ 20} "THE COURT: I think he's done a wonderful job for you personally.

{¶ 21} "MR. MCCOY: I do too.

{¶ 22} "THE COURT: And I really don't think that the, from hearing all the evidence so far, I don't think the tapes would have made any difference in the case. Do you?

{¶ 23} "MR. MCCOY: I don't know.

---

2. McCoy's elderly mother was ill with cancer at the time of the alleged crime and apparently died before trial.

{¶ 24} "THE COURT: Well, who knows for sure, but it doesn't look to me like those tapes would have been critical to your Defense or even helpful to your Defense, because number one, we don't know what was videotaped and what wasn't, and secondly, it doesn't seem like anything on the tapes would have been helpful to your Defense. I mean, that's what it looks like to me. But other than that, you've been very pleased with your Attorney's performance?

{¶ 25} "MR. MCCOY: Yes."

{¶ 26} Following this exchange, the trial court read McCoy's rights to him and obtained a waiver of the rights. McCoy indicated again that his attorney had done everything he had asked and that he was satisfied with his representation. McCoy also pleaded no contest to the charge and signed a written plea form.

{¶ 27} After considering the presentence investigation report, which indicated that McCoy had an extensive background of various offenses, the trial court imposed a sentence of six months' imprisonment. This was a slight departure from the state's recommendation of community control, but the trial court stated that it did not feel that McCoy was amenable to rehabilitation, given his lengthy criminal background. McCoy now appeals from his conviction and sentence.

## II

{¶ 28} McCoy's first assignment of error is as follows:

{¶ 29} "Appellant was denied his right to representation by counsel at the preliminary hearing held in anticipation of the trial of this case."

{¶ 30} Under this assignment of error, McCoy contends that his conviction must be reversed and vacated because he was denied his constitutional right of counsel at the preliminary hearing held in municipal court, before being bound over to common pleas court. McCoy does not indicate how the denial prejudiced him, but simply states that denial of counsel at the preliminary hearing stage will almost always constitute reversible error.

{¶ 31} We note that McCoy failed to file a transcript of the preliminary hearing with his appeal. Where a party fails to file appropriate parts of the record, an appellate court has no record to review and must presume the regularity of the proceedings below. See, e.g., *State v. Bernhard,* Greene App. No. 2004 CA 66, 2005-Ohio-1052, 2005 WL 567313, at ¶ 17 (rejecting defendant's claim of error in sentencing, where the defendant failed to file transcripts of the plea and sentencing hearings). Accordingly, we presume the regularity of the proceedings in municipal court.[3]

---

3. We note that the state has asked to supplement the record with a partial transcript of the arraignment. The state's motion was granted, but the transcript is still inadequate for review,

{¶ 32} Even if we were to consider McCoy's argument on the merits, we would reject it. McCoy contends that counsel was previously assigned to him but was absent from the preliminary hearing. McCoy contends that he represented himself at the preliminary hearing and that his waiver cannot be assumed from a silent record.

{¶ 33} The record before us indicates that a complaint was filed in Troy Municipal Court on June 12, 2008, alleging that McCoy had committed obstruction of justice in violation of R.C. 2921.32(A), a fifth-degree felony. The municipal court set the matter for preliminary hearing on June 18, 2008. The record before us contains no indication that an attorney was appointed for McCoy prior to the preliminary hearing. However, a written waiver of counsel signed by McCoy and the municipal judge was filed on June 19, 2008. The waiver indicated that McCoy appeared in open court on June 18, 2008, and was advised of the nature of the charges, of his right to counsel, and of the right to a reasonable continuance to obtain counsel. The waiver further indicates that McCoy waived his right to counsel. The municipal judge also filed an entry on June 20, 2008, finding probable cause for McCoy's involvement in the crime, and binding McCoy over to the Common Pleas Court for Miami County, Ohio.

{¶ 34} McCoy was subsequently indicted by a grand jury, and counsel was appointed to represent McCoy. As was noted, counsel represented McCoy at all stages of that proceeding, including the jury trial, where McCoy pleaded no contest to the charge on the second day of trial. No motion was filed in common pleas court contesting the lack of counsel at the municipal court hearing.

{¶ 35} "The Sixth Amendment, as applied to the states through the Fourteenth Amendment, guarantees that an accused in a criminal case shall enjoy the right to have the assistance of counsel for his defense. * * * The Sixth Amendment right to counsel attaches once adversarial judicial criminal proceedings have commenced against the accused, * * * [which] 'include formal charge, preliminary hearing, indictment, information, or arraignment.'" *State v. Sapp,* Clark App. No. 99 CA 84, 2002-Ohio-6863, 2002 WL 31780943, at ¶ 42, quoting *Kirby v. Illinois* (1972), 406 U.S. 682, 688, 92 S.Ct. 1877, 32 L.Ed.2d 411.

{¶ 36} In *State v. Spates* (1992), 64 Ohio St.3d 269, 595 N.E.2d 351, the Ohio Supreme Court held:

{¶ 37} "While the denial of counsel at the preliminary-hearing stage of a criminal proceeding will almost always constitute reversible error, a subsequent guilty plea by defendant during the criminal proceeding may constitute a waiver

---

because it is only a partial transcript. We further note that McCoy did not ask to file a complete transcript, even after the matter was brought to his attention.

of any and all constitutional infirmities that occur prior to the submission of the guilty plea." Id. at 271, 595 N.E.2d 351.

{¶ 38} Despite this comment, the Ohio Supreme Court has rejected imposition of a per se rule for Sixth Amendment violations occurring at arraignment. *State v. Bonnell* (1991), 61 Ohio St.3d 179, 182, 573 N.E.2d 1082. The Ohio Supreme Court, instead, requires defendants to demonstrate that they have been prejudiced by the absence of counsel at arraignment. Id. Accord *State v. Evans* (1992), 63 Ohio St.3d 231, 250, 586 N.E.2d 1042.

{¶ 39} Our own district has previously found no arguable merit to a claim that a trial court erred by permitting the defendant to waive a preliminary hearing without the assistance of counsel. *State v. McDougald*, Montgomery App. No. 03CA44, 2004-Ohio-4512, 2004 WL 1908314, at ¶ 24. We noted in *McDougald* that "in cases such as this one where Defendant has been charged with a felony offense, which may only be done by indictment, neither the complete absence of a preliminary hearing nor the failure to appoint counsel before the preliminary hearing denies Defendant any constitutional rights." Id., citing *Douglas v. Maxwell* (1963), 175 Ohio St. 317, 25 O.O.2d 185, 194 N.E.2d 576; Crim.R. 5(B) and 7(A). See also *State v. Seldon*, Cuyahoga App. Nos. 80129, 80130, 2003-Ohio-1947, 2003 WL 1894562, at ¶ 5 (observing that "a subsequent indictment of the defendant by a grand jury renders any defects in the preliminary hearing moot").

{¶ 40} In addition, the Twelfth District Court of Appeals has found waiver of the right to challenge denial of counsel at a preliminary hearing, where the defendants failed to file pretrial motions relating to waiver of counsel and the trial court subsequently followed Crim.R. 11 before accepting the defendants' no-contest pleas. *State v. Dunigan*, Madison App. Nos. CA2001–11–025, CA2001–11–026, 2002-Ohio-5885, 2002 WL 31414786, at ¶ 15.

{¶ 41} Accordingly, McCoy's first assignment of error is overruled.

### III

{¶ 42} McCoy's second assignment of error is as follows:

{¶ 43} "Appellant was effectively denied his right to counsel under the Sixth and Fourteenth Amendments to the United States Constitution because the trial court erred by denying appellant's request for substitution of counsel."

{¶ 44} Under this assignment of error, McCoy contends that his right to counsel was violated because the trial court arbitrarily denied his timely request for substitution of counsel. As was noted, McCoy requested substitute counsel at the beginning of trial, but his motion was overruled.

{¶ 45} "When a defendant asks the trial court for a new attorney during the course of trial, the trial court must adequately investigate the defendant's complaint." *State v. Jones*, Montgomery App. No. 20349, 2005-Ohio-1208, 2005 WL 628233, at ¶ 12, citing *State v. Deal* (1969), 17 Ohio St.2d 17, 18–19, 46 O.O.2d 154, 244 N.E.2d 742. "In evaluating a request for substitute counsel, the court must balance 'the accused's right to counsel of his choice [against] the public's interest in the prompt and efficient administration of justice.' *United States v. Jennings* (C.A.6, 1996), 83 F.3d 145, 148. 'The trial court's decision is reviewed under an abuse-of-discretion standard.' [*State v.*] *Cowans* (1999), 87 Ohio St.3d [68,] 73, 717 N.E.2d [298.]'" (Bracketed material in original.) *State v. Murphy* (2001), 91 Ohio St.3d 516, 523, 747 N.E.2d 765.

{¶ 46} In this regard, we have stressed:

{¶ 47} "A determination of whether an indigent criminal defendant has shown good cause for the substitution of counsel necessarily involves the exercise of some discretion. Only in the most extreme circumstances should appointed counsel be substituted. *State v. Glasure* (1999), 132 Ohio App.3d 227, 239, 724 N.E.2d 1165. An indigent criminal defendant is entitled to the effective assistance of counsel, but not to his first choice of counsel." *State v. Satterwhite*, Montgomery App. No. 23142, 2009-Ohio-6593, 2009 WL 4829829, at ¶ 40.

{¶ 48} We have also previously found a suggestion of bad faith where motions to substitute counsel are made on the day of trial, particularly when the trial date has been set for some time. *Satterwhite*, 2009-Ohio-6593, 2009 WL 4829829, at ¶ 42. In such circumstances, there must be "a strong showing of good cause to overcome the implication of bad faith resulting from the timing of the motion." Id.

{¶ 49} After reviewing the record, we find no abuse of discretion. The trial court adequately investigated McCoy's complaints, but did not find them sufficient to warrant substitution of counsel. We agree with the trial court.

{¶ 50} Furthermore, McCoy's assertions do not provide the strong showing of good cause that would overcome an implication of bad faith. The original trial date of December 9, 2008, had been scheduled in July 2008, or approximately five months earlier. In early December 2008, the trial court continued the trial due to the court's unavailability. That trial date, January 9, 2009, was continued again, based on an alleged health issue of McCoy. McCoy's motion for continuance was filed on January 2, 2009. Shortly thereafter, the court set a new trial date for January 21, 2009, and trial commenced on that date.[4] Thus, the case had been pending for a substantial amount of time during which McCoy could have

---

4. The speedy-trial deadline was February 25, 2009.

alerted the court to potential problems. Instead, McCoy waited until the morning of trial.

{¶ 51} As an additional matter, the state indicated that defense counsel had reviewed the tapes, and counsel's failure to subpoena tapes would have been a matter of trial strategy. McCoy also failed at trial, and still fails, to articulate a clear explanation of why any television videotape would have assisted his case. Our review of the transcript and the testimony of both state and defense witnesses fails to disclose how the video might have been relevant. The evidence of McCoy's obstruction of justice comes from statements he allegedly made to police, his actions inside the home while police searched the premises, and the fact that the suspect was located beneath a pile of objects that could not have been stacked without assistance.

{¶ 52} Finally, we note that when McCoy pleaded no contest, he agreed with the trial court that his attorney had done a wonderful job at trial. This is inconsistent with the assertion of a breakdown in the attorney-client relationship.

{¶ 53} McCoy's second assignment of error is overruled.

## IV

{¶ 54} All of McCoy's assignments of error having been overruled, the judgment of the trial court is affirmed.

Judgment affirmed.

DONOVAN, P.J., and GRADY, J., concur.

ROBERT P. RINGLAND, J., of the Twelfth Appellate District, sitting by assignment.

GRADY, Judge, concurring.

{¶ 55} An indigent defendant has a Sixth Amendment right to appointed counsel at a preliminary hearing. *Coleman v. Alabama* (1970), 399 U.S. 1, 90 S.Ct. 1999, 26 L.Ed.2d 387. We have not been provided a transcript of the preliminary hearing that would demonstrate that, in fact, defendant McCoy was deprived of his right to counsel in that proceeding. However, the state in its brief represents that "Defendant was appointed counsel but elected to go forward without the attorney." That representation is sufficient for us to conclude that McCoy was unrepresented at his preliminary hearing. That conclusion presents two further issues.

{¶ 56} The first issue is whether the defendant knowingly, intelligently, and voluntarily waived his right to counsel. There is a strong presumption against a waiver of that right. *Von Moltke v. Gillies* (1948), 332 U.S. 708, 68 S.Ct. 316, 92

L.Ed. 309. A finding that the presumption is rebutted requires a thorough inquiry into the circumstances of the waiver. Id. Because the burden of proving a rebuttal falls upon the state, failure to file a transcript of the preliminary hearing demonstrating the circumstances of the waiver is chargeable to the state.

{¶ 57} The second issue is, if a valid waiver was lacking, is the error reversible? Denial of the right to counsel will almost always result in reversible error. *State v. Spates* (1992), 64 Ohio St.3d 269, 595 N.E.2d 351. However, when the denial occurs at a preliminary hearing, the test is whether the error was harmless beyond a reasonable doubt in relation to the trial that resulted in the defendant's conviction. *Coleman*, 399 U.S. at 11, 90 S.Ct. 1999, 26 L.Ed.2d 387; *Chapman v. California* (1967), 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705. A failure to provide a constitutionally mandated procedure is harmless beyond a reasonable doubt if there is no reasonable possibility that providing the procedure would have produced a more favorable result. Painter and Pollis, Baldwin's Ohio Appellate Practice (2009–2010 Ed.), Section 7:16.

{¶ 58} There is no basis for finding that providing defendant with counsel at his preliminary hearing, or refusing to accept his waiver of his right to counsel in that proceeding, would have produced a more favorable result for him. Indeed, defendant fails to argue that any matter occurred at his preliminary hearing that would have produced a more favorable outcome for him in relation to his decision to enter a no-contest plea, had the matter not occurred. Therefore, on this record, any error that may have occurred in denying defendant his right to counsel at the preliminary hearing was harmless beyond a reasonable doubt.