DECISION AND JUDGMENT ENTRY
{¶ 1} Mark R. Tackett appeals his conviction in the Jackson County Municipal Court for domestic violence. Tackett contends that his conviction is not supported by sufficient evidence. Because the record contains evidence that, if believed, would convince the average mind of Tackett's guilt beyond a reasonable doubt, we disagree. Tackett next contends that the trial court abused its discretion in denying him a jury trial. We agree because: (1) the right to a jury trial is a constitutional right, (2) the trial court ignored the indicators that Tackett did not fully understand his rights and the steps needed to preserve them, and (3) the trial court did not afford Tackett any latitude with respect to the procedural requirements for preserving his rights despite the fact that Tackett was not represented by counsel. Finally, Tackett contends that the trial court deprived him of his constitutional right to counsel. Because the trial court presumed an implied waiver of the right to counsel, when the record does not demonstrate that Tackett has experience with the judicial system and the trial court did not apprise Tackett of the pitfalls of self-representation, we agree. Accordingly, we reverse the judgment of the trial court and remand this cause for further proceedings consistent with this opinion.
 I. {¶ 2} Leann D. Tackett, Tackett's estranged wife, signed a complaint in Jackson County Municipal Court alleging that Tackett made a threat that caused Leann to believe that Tackett would cause imminent physical harm to her or a member of her family or household. Specifically, when Tackett dropped off the couple's daughter, Megan, Leann informed him that she would not sign Tackett's proposed divorce settlement papers. The two began arguing.
 {¶ 3} According to Leann, Tackett threatened to stop paying the mortgage and utility bills on the home where Leann lived. He also threatened to "kick [the] ass" of Leann's male friend, who was not present during the argument. As Tackett walked away from the home toward his car, he looked at Leann and said, "and I'll make sure you get yours." Leann asked Tackett if he was threatening her, and he replied, "Well you take it however you want it." Leann took Tackett's statement to mean that he intended to cause her physical harm. The state charged Tackett with violating R.C. 2919.25(C), domestic violence menacing.
 {¶ 4} Later that day, Tackett and his girlfriend, Angela Ferguson, drove to Leann's to pick up Megan. Tackett stayed in the car while Ferguson went to the door. Leann informed Ferguson that Megan could not go with them because Megan had not cleaned her room. Leann and Ferguson began to argue, and Ferguson stated that she was going to "kick [Leann's] ass." Tackett then came onto Leann's property, grabbed Ferguson's arm or hand, and told her they should go. The state did not file any charges against Tackett related to the incident. However, the state charged Ferguson with violating R.C. 2903.22, menacing, for the threats she made to Leann during the incident.
 {¶ 5} At Tackett's arraignment, the court played a videotape that briefly outlined a criminal defendant's legal rights. The fifth of the eleven topics covered by the tape stated in part: "You have the right to have your case tried by a jury if the possible sentence includes either jail time or a fine of more than $100. This demand must be written and filed with the clerk at least ten (10) days before the date of your trial." The tape concluded with the statement: "If you have any questions concerning either the nature of your charge or your rights at this hearing, be sure to ask them when you have a seat at this counsel table. Please have a seat at this table when your name is called."
 {¶ 6} When the court called Tackett's name, it inquired whether Tackett understood his rights as outlined in the video. Tackett indicated that he did. The court then informed Tackett that the charge against him is punishable by up to a $250 fine and thirty days in jail. Tackett pled not guilty and requested a court appointed attorney. The court asked Tackett some questions about his income and the number of people he supports, and then informed Tackett that he did not qualify for court-appointed counsel.
 {¶ 7} The court then explained that Tackett's trial would occur in the next forty-five days if he did not waive his right to a speedy trial. Tackett asked, "Can it be a jury trial?" and the court responded, "Well Sir, there is a procedure that you would have to follow and you would need to follow that procedure. Ok. And that was all explained to you on the video and when you said that you understood your rights . . . Um." Tackett said, "But it didn't say how you go about getting a Jury," to which the court replied, "Oh, yes it did Sir." The court continued, "The video most definitely explains jury trials and it most definitely does. Sir if you will go with the Bailiff we will process your paperwork."
 {¶ 8} The trial court sua sponte joined Tackett's case with Ferguson's. Tackett appeared for trial without counsel. Leann testified to the facts as described above. Tackett testified on his own behalf. He claimed that he insulted Leann's male friend, but did not threaten to harm him. He further testified that he intended the "you get yours" statement to mean that Leann would "come up short in the divorce proceedings." The court found Tackett guilty and imposed a sentence including a suspended jail commitment and a fine.
 {¶ 9} Tackett appeals, asserting the following assignments of error: "I. The trial court erred by finding [Tackett] guilty in the absence of any evidence that he knowingly caused Leann to believe he intended to ever cause her physical harm. II. The trial court erred and abused its discretion in convicting [Tackett] in the absence of proof that he made a threat of imminent physical harm. III. The trial court erred and abused its discretion in convicting [Tackett] after denying him his constitutional right to a jury trial. IV. The trial court erred and abused its discretion in convicting [Tackett] after denying him his constitutional right to counsel."
 II. {¶ 10} In his first two assignments of error, Tackett contends that the record does not contain any evidence to support certain elements of the state's case. Thus, Tackett challenges the sufficiency of the evidence supporting his conviction.
 {¶ 11} An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Id., citing Jackson v. Virginia (1979), 443 U.S. 307,99 S.Ct. 2781, 61 L.Ed.2d 560. This test raises a question of law and does not allow the court to weigh the evidence. State v. Martin (1983),20 Ohio App.3d 172, 175. Evidence supporting a defendant's conviction may be direct or circumstantial. "Circumstantial evidence and direct evidence inherently possess the same probative value and therefore should be subjected to the same standard of proof." Jenks, 61 Ohio St.3d 259 at paragraph one of the syllabus.
 {¶ 12} Tackett contends that the record does not contain any evidence to prove that he possessed the requisite intent to knowingly cause Leann to believe he would cause her harm. Tackett testified that he only intended to tell Leann that the outcome of their divorce proceedings would be unfavorable to her. Because there is no other direct evidence of Tackett's intent, Tackett concludes that the record does not contain sufficient evidence that he intended to cause her to fear imminent physical harm.
 {¶ 13} When the issue in dispute is a defendant's purpose or intent, it is necessary to rely upon circumstantial evidence because intent cannot be proved by a third person's direct testimony, but must be gathered from the surrounding facts and circumstances. State v. Lott
(1990), 51 Ohio St.3d 160, 168, certiorari denied 498 U.S. 1017,111 S.Ct. 591, 112 L.Ed.2d 596. Here, the circumstances surrounding Tackett's statement include that Tackett made the statement during an intense argument. In particular, the threat came immediately after he allegedly made an unambiguous threat of physical harm against Leann's friend. When Leann asked whether he was threatening her, he did not clarify that he was not. When viewing this evidence in a light most favorable to the state, we find that a rational trier of fact could have found that Tackett realized his statement would cause Leann to reasonably believe that he intended to cause physical harm to her.
 {¶ 14} Tackett also contends that the record does not contain any evidence that Leann reasonably believed that the physical harm he threatened was imminent. In Strong v. Bauman, (May 21, 1999), Montgomery App. Nos. 17256 and 17414, the court defined "imminent" as "ready to take place," "near at hand," "impending," "hanging threateningly over one's head," or "menacingly near." "`Imminent' does not mean that `the offender carry out the threat immediately or be in the process of carrying it out.'" Henry v. Henry, Ross App. No. 04CA2781, 2005-Ohio-67, quotingStrong. Rather, the critical inquiry is "whether a reasonable person would be placed in fear of imminent (in the sense of unconditional, non-contingent), serious physical harm * * *." Henry at ¶ 19; see, also, State v. Taylor (1996), 79 Ohio Misc.2d 82, 85.
 {¶ 15} To determine whether a threat of harm is "imminent" as contemplated by R.C. 2919.25(C), the victim's state of mind is relevant.State v. Drake (1999), 135 Ohio App.3d 507, 510; see, also, Jacksonv. Adams, Jackson App. No. 01CA2, 2001-Ohio-2617. Thus, the victim's testimony that she believed she would suffer imminent physical harm constitutes evidence of imminence. See Jackson v. Adams, supra. Additionally, the fact that the victim went to the police may serve as evidence that demonstrates the victim's belief that physical harm was imminent. Id.; Strong, supra.
 {¶ 16} Here, Tackett was walking away from Leann when he made the allegedly threatening statement, "I'll make sure you get yours." Additionally, he made the statement in the context of an argument about how they would divide their assets and obligations in their divorce. While we agree with Tackett that these facts tend to undermine the state's contention that Tackett threatened Leann with imminent physical harm, it is not our duty to weigh the evidence. Martin, supra. Leann testified that she believed Tackett intended to cause her physical harm. The threat was not conditioned or contingent on some other factor. The fact that Leann went to the police to report Tackett's threat bolsters her testimony. Construing this evidence in the light most favorable to the state, we find that a rational trier of fact could have found that Tackett's statement caused Leann to reasonably fear that she would suffer imminent physical harm.
 {¶ 17} Because we find, after viewing the evidence in a light most favorable to the state, that a rational trier of fact could have found the essential elements of domestic violence menacing proven beyond a reasonable doubt, we find that sufficient evidence supports Tackett's conviction. Tackett did not assign an error asserting that his conviction is contrary to the manifest weight of the evidence, and we decline to reach the issue. Accordingly, we overrule Tackett's first and second assignments of error.
 III. {¶ 18} In his third assignment of error, Tackett asserts that the trial court abused its discretion by denying him his constitutional right to a jury trial. The State contends that Tackett waived his right to a jury trial.
 {¶ 19} As a general rule, the United States Supreme Court has always set high standards of proof for the waiver of constitutional rights.Johnson v. Zerbst (1938), 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed 1461
("Trial courts must indulge every reasonable presumption against waiver.") Because of the fundamental importance of the right to a jury trial, the trial court must not lightly infer a waiver of the right to a jury trial. State v. Scott (1997), 123 Ohio App.3d 331, citingTallmadge v. DeGraft-Biney (1988), 39 Ohio St.3d 300, 301-302. However, in misdemeanor cases, the state does not violate a defendant's constitutional rights when it conditions the right upon the filing of a written demand for a jury trial. Mentor v. Giordano (1967),9 Ohio St.2d 140, at paragraph one of the syllabus.
 {¶ 20} Crim.R. 23 governs the procedure for obtaining or waiving a trial by jury. It provides, in relevant part: "In petty offense cases, where there is a right of jury trial, the defendant shall be tried by the court unless he demands a jury trial. Such demand must be in writing and filed with the clerk of court not less than ten days prior to the date set for trial, or on or before the third day following receipt of notice of the date set for trial, whichever is later. Failure to demand a jury trial as provided in this subdivision is a complete waiver of the right thereto."
 {¶ 21} "The purpose behind Crim.R. 23(A) is to ensure that criminal defendants do not wait until they have reached the courthouse steps on the day of trial to demand a jury. This would result in undue delay and expense and possibly prejudice the state." State v. Burton (1988),39 Ohio App.3d 151, 151. However, "[w]here a request for jury trial is made sufficiently in advance of the actual trial as not to interfere with the orderly administration of the business of the court and will not result in any unnecessary delay or inconvenience to witnesses or prejudice to the state, it may well be an abuse of discretion for the trial court to deny a jury trial." State v. Edwards (1965),4 Ohio App.2d 261, 266, citing People v. Osmon (1961),15 Cal.Rptr. 263. See, also, Burton at 151-152; State v. Rupe (Mar. 6, 1987), Fairfield App. No. 45-CA-86.
 {¶ 22} The same rules of procedure that apply to litigants with counsel bind even pro se litigants. Meyers v. First Natl. Bank (1981),3 Ohio App.3d 209, 210. However, to decide cases on their merits and further the interest of justice, we must give pro se litigants wide latitude, particularly with regard to formal requirements. Neace v.Neace, Scioto App. No. 02CA2824, 2003-Ohio-276, at ¶ 16, citing Millerv. Kutschbach (1996), 111 Ohio App.3d 157, 159, fn. 3. "To be sure, this court has firmly rejected all notions that pro se litigants be held to the same standard as attorneys during trial court proceedings." Neace
at ¶ 16; Karmasu v. Tate (1992), 83 Ohio App.3d 199, 206, citingWright v. Miller (Mar. 8, 1991), Highland App. No. 752. See, also, In rePaxson (July 1, 1992), Scioto App. No. 91CA2008 (holding that the courtmust afford considerable latitude to pro se actions brought by prisoners).
 {¶ 23} Here, the parties do not dispute that Tackett did not file a written request for a jury trial. However, the record also indicates that Tackett did not fully understand his rights and the actions required to preserve them. The videotape specifically invited defendants to ask questions of the court when their case was called. Although Tackett first stated that he understood his rights as outlined in the videotape, he made that statement before the court informed him of the specific charge and possible penalties confronting him, and thus before he knew whether the procedure to obtain a jury trial applied to him. The questions he asked minutes later reveal that he was uncertain about whether he had a right to a jury trial and how to obtain one. The court chose to sidestep Tackett's questions rather than answer them directly.
 {¶ 24} The court's actions did not further the purpose of Crim.R. 23(A). Tackett made his request for a jury trial sufficiently in advance of the actual trial so that honoring his request would not interfere with the orderly administration of the business of the court, nor result in any unnecessary delay or inconvenience to witnesses, nor prejudice the state.
 {¶ 25} Additionally, the court's actions did not provide Tackett the wide latitude our court affords pro se litigants to further the interests of justice. Although the videotape invited Tackett to ask questions, and Tackett asked about how to obtain a jury trial within minutes of appearing before the court, the court unwaveringly held Tackett to his initial affirmation that he understood the videotape. The court appeared to take Tackett's understanding of the videotape to mean that he also memorized it. The court could have restated the formal requirements necessary to obtain a jury trial in the time that it chastised Tackett for not recalling those requirements or fully comprehending how they applied to his case. Thus, even though Tackett was pro se and Crim.R. 23 is a procedural rule, the court held Tackett to the same standard it would require from an attorney requesting a jury trial.
 {¶ 26} Because the right to a jury trial is a constitutional right and Civ.R. 23(A) is a procedural rule, because the trial court ignored the indicators that Tackett did not fully understand his rights and the steps needed to preserve them, and because the trial court did not afford Tackett any latitude with respect to the formal requirements for preserving his rights, we find that the trial court abused its discretion in denying Tackett's request for a jury trial. Accordingly, we sustain Tackett's third assignment of error.
 IV. {¶ 27} In his fourth assignment of error, Tackett contends that the trial court erred and abused its discretion by denying him his constitutional right to counsel. The state contends that Tackett waived his right to counsel.
 {¶ 28} The Sixth Amendment to the United States Constitution, and Section 10, Article 1 of the Ohio Constitution guarantee the right to assistance of counsel in all criminal prosecutions that may result in jail sentences. State v. Wellman (1974), 37 Ohio St.2d 162, 171, citingArgersinger v. Hamlin (1972), 407 U.S. 25, 92 S.Ct. 2006, 32 L.Ed.2d 530. The right to assistance of court-appointed counsel in criminal cases is a factual issue in Ohio that does not necessarily depend on the defendant's indigency or whether he or she should be able to employ counsel, but on whether, in fact, the defendant is unable to employ counsel. State v.Tymcio (1975), 42 Ohio St.2d 39, 45; State v. McLean (1993),87 Ohio App.3d 392, 395.
 {¶ 29} Waiver of the right to counsel can be express or implied. Statev. Glasure (1999), 132 Ohio App.3d 227, 234. However, we must indulge every reasonable presumption against a waiver of fundamental constitutional rights. Brewer v. Williams (1977), 430 U.S. 387,97 S.Ct. 1232, 51 L.Ed.2d 424; Johnson, supra. Therefore, before a defendant can waive the right to counsel, the court must be satisfied that the defendant made an intelligent and voluntary waiver of the right with the knowledge that he will have to represent himself. State v.Ebersole (1995), 107 Ohio App.3d 288, 293, citing Faretta v.California (1975), 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562, and Statev. Gibson (1976), 45 Ohio St.2d 366. The court must inform the defendant of the dangers inherent in selfrepresentation before permitting him to proceed without counsel. Glasure at 227; Ebersole at 293, citing Faretta
and Gibson.
 {¶ 30} Crim.R. 44, which covers the assignment of counsel and waiver of counsel, provides: "Where a defendant charged with a petty offense is unable to obtain counsel, no sentence of confinement may be imposed upon him, unless after being fully advised by the court, he knowingly, intelligently, and voluntarily waives assignment of counsel." Crim.R. 44(B). The rule further provides that "[w]aiver of counsel shall be in open court and the advice and waiver shall be recorded as provided in Rule 22." Crim.R. 44(C). Strict compliance with the procedure outlined in Crim.R. 44 is not necessary, so long as the court followed the substance and spirit of that rule. Ebersole, supra, 107 Ohio App.3d at 293, citing State v. Overholt (1991), 77 Ohio App.3d 111. Accordingly, if the record reflects substantial compliance with the procedural rule, the court may find an implied waiver. Id.
 {¶ 31} Even where the waiver of counsel is implied, the court must make a pretrial inquiry to determine that the waiver is knowing, intelligent and voluntary. Glasure at 236, citing United States v. Allen
(C.A.10, 1990), 895 F.2d 1577, 1579. When a defendant who, though financially able, fails to retain counsel in an attempt to delay or otherwise frustrate the judicial process, the court may find an implied waiver. See State v. Hook (1986), 33 Ohio App.3d 101. However, to infer such a waiver, the court must take into account the total circumstances of the individual case, including the defendant's background, experience, and conduct. Glasure at 236, citing Hook at 103. In Hook, the defendant was not inexperienced with the judicial system or that case in particular since it had already been tried, and then reversed and remanded for a new trial. It was clear that the defendant was aware of the nature of the charges, the possible defenses, and the evidence the state would present, and therefore the trial court could properly infer the defendant's waiver of his right to counsel. In contrast, the waiver of counsel cannot be implied when the trial court fails to make any attempt to inform the defendant of the gravity of his decision to proceed to trial without counsel. Glasure at 236, citing State v. Weiss (1993),92 Ohio App.3d 681.
 {¶ 32} Here, Tackett requested court-appointed counsel. The trial court arguably conducted a perfunctory hearing on Tackett's ability to obtain counsel, though it refused to permit Tackett to present any testimony regarding his ability to obtain counsel other than his income, and thus ignored the Tymico rule requiring an inquiry into the defendant's actual ability to obtain counsel. Even assuming that the trial court properly determined that Tackett was able to obtain counsel on his own, the court failed to establish that Tackett made a valid waiver of his right to counsel. The trial court inferred Tackett's waiver of his right to counsel without making any attempt to inform Tackett of the dangers inherent in self-representation or determine if Tackett was familiar enough with the judicial system to understand such dangers. Thus, we find that the trial court effectively deprived Tackett of his right to counsel. Accordingly, we sustain Tackett's fourth assignment of error.
 V. {¶ 33} In sum, we find that the state presented sufficient evidence to support Tackett's conviction. However, we find that the trial court deprived Tackett of his constitutional rights to a jury trial and to representation by counsel. Accordingly, we reverse the judgment of the trial court, and remand this cause to the trial court for further proceedings consistent with this opinion.
Judgment Affirmed in part, Reversed in part, and cause remanded.
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE AFFIRMED IN PART AND REVERSED IN PART, and the cause remanded to the trial court for further proceedings consistent with this opinion, and Appellant and Appellee to split costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Jackson County Municipal Court to carry this judgment into execution.
If a stay of execution of sentence and release upon bail has been previously granted by the trial court or this court, it is continued for a period of sixty days upon the bail previously posted. The purpose of said stay is to allow appellant to file with the Ohio Supreme Court an application for a stay during the pendency of proceedings in that court. The stay as herein continued will terminate in any event at the expiration of the sixty day period.
The stay shall terminate earlier if the appellant fails to file a notice of appeal with the Ohio Supreme Court in the forty-five day appeal period pursuant to Rule II, Sec.2 of the Rules of Practice of the Ohio Supreme Court. Additionally, if the Ohio Supreme Court dismisses the appeal prior to expiration of said sixty days, the stay will terminate as of the date of such dismissal.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
Abele, P.J.: Concurs in Judgment and Opinion. Harsha, J.: Concurs in Judgment Only.