[Cite as *State v. Walker*, 2021-Ohio-235.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
ADAMS COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| | : | |
| Plaintiff-Appellee, | : | Case No. 19CA1102 |
| | : | |
| v. | : | |
| | : | DECISION AND JUDGMENT |
| ERNEST A. WALKER, | : | ENTRY |
| | : | |
| Defendant-Appellant. | : | |

_____
APPEARANCES:

Timothy P. Young, Ohio State Public Defender, Katheryn R. Ross-Kinzie, Assistant Public Defender, Columbus, Ohio, for Appellant.

David Kelley, Adams County Prosecutor, West Union, Ohio, for Appellee.

_____

Smith, P.J.

{¶1} Ernest A. Walker appeals the judgment entry of the Adams County Court, entered September 19, 2019. Subsequent to a bench trial, Walker was convicted of misdemeanor traffic charges. On appeal, Walker asserts three assignment of errors: (1) that the trial court unconstitutionally shifted the State's burden of proof; (2) that Walker's convictions are against the manifest weight of the evidence; and (3) that the trial court abused its discretion when it denied Walker's request for a jury trial. Upon review of the record, we find merit to Appellant's third assignment of error. Thus, we

reverse the judgment of the trial court and remand for further proceedings consistent with this opinion.

FACTUAL AND PROCEDURAL BACKGROUND

{¶2} After law enforcement officers confronted Ernest A. Walker, "Appellant," outside the United Dairy Farmers in West Union on June 28, 2019, Appellant was cited for operating a vehicle under the influence of alcohol or a drug of abuse, R.C. 4511.19(A)(1)(A); OVI refusal, R.C. 4511.19(A)(2); failure to control a motor vehicle, R.C. 4511.202; and failure to stop after an accident, R.C. 4549.03. Appellant was arraigned at the Adams County Court on July 1, 2019. He was brought with other inmates from the Adams County Jail.[1]

{¶3} Appellant did not have the benefit of legal counsel with him at the arraignment. The arraignment transcript reflects that the trial court inquired as to whether Appellant was able to hear the "general statement" as to the "arraignment consequences," and Appellant replied, "Yes." Appellant pled not guilty to all four offenses. After entering his plea, the trial court informed, "We will set the matter for a pretrial and a trial."

{¶4} Appellant informed the court he could not afford an attorney so the court advised that it would appoint legal counsel. The matter was also

---

[1] Appellant was held in the jail pending arraignment due to a prior outstanding warrant for failing to appear in that court.

scheduled for a trial on July 22, 2019.  A "Notice of Trial Pretrial, Etc."

dated July 2, 2019 contains Appellant's signature.  This notice indicates

"court trial."

{¶5} On July 8, 2019, Appellant's counsel filed a notice of

representation, request for discovery, and bill of particulars.  A transcript of

that same date, entitled "Transcript of Final Pretrial," indicates that

Appellant's counsel appeared in court on that date but Appellant did not.

However, Appellant was still lodged in the jail.  The only significance of this

brief transcript is that it indicates that Appellant would be brought over from

the jail.  The transcript does not contain any discussion with Appellant or

any indication that Appellant was in fact brought into the courtroom.

{¶6} The record also contains a transcript of "court trial" held July 22,

2019.  The transcript reflects that another attorney was substituting for

Appellant's appointed counsel, who was not feeling well that day.  The

transcript is actually unclear as to whether the trial court or the assistant

prosecutor stated as follows:

> At the. [sic] Discovery was complete and we were actually
> going to do a Court Trial today before Ms. Drinnon came up ill.
> So, this would be whether we want to continue the Court trial
> for another time.

{¶7} At this point, Appellant's substitute attorney indicated that

Appellant had some concerns about his charges, i.e. whether he was being charged with a second or third offense OVI.  Everyone agreed that Appellant needed to talk to his own attorney, the one familiar with his case.  The trial court stated a six-week continuance would be appropriate.  On July 22, 2019, a journal entry indicates Appellant's case was reassigned for court trial on September 6, 2019.

{¶8} On September 6, 2019, the proceedings began with another discussion about the level of Appellant's OVI offense.  However, Appellant's court-appointed counsel advised the court Appellant had another concern.  The trial transcript contains the following discussion of Appellant's request for a jury trial.

Appellant:         We will leave it to a jury trial.

Atty. Drinnon:     Is the fact that my client has stated he believes he's not going to receive a fair trial.

Appellant:         Yeah.

Court:             I think he's under a little bit of a misconception because he keeps saying move it to a jury trial, so it goes upstairs.  I keep telling him that that [sic.] doesn't mean it goes upstairs.  I would still be down here, but at this point and time I don't know

what the court would want or wish.  I do have to do I think, um, you know, ethically.

***

Prosecutor:    I would oppose that just to because it's within the seven days.

Court:    Um it's absolutely in the seven days.  And if there were, if you had wanted a jury trial that was part of the arraignment when I went through the arraignment actually with you probably twice I talked to you about that.

Appellant:    Yeah, you see my lawyer the 28th of last month so, how am I going to get anything done within seven days?

Court:    So, we, uh, you were here for an arraignment and at the arraignment I always discuss very clearly about how the demand for jury trial is done.  That time has come and gone if we're otherwise ready for trial.  We've got our witnesses here were going to go [inaudible].

Appellant:    Well let's do it then.

***

Court:          On behalf of your client who brought those things

up both in regard to the question about the second

OVI charge and also in regard to a jury trial which

would be overruled. We are going to go forward

with trial today.

{¶9} Appellant was found guilty of all charges. The trial court ordered a pre-sentence investigation and report. The matter was deferred for sentencing on September 19, 2019.

{¶10} At sentencing, the trial court merged the two OVI convictions. The trial court sentenced Appellant on the second offense OVI charge to 180 days in the Adams County Jail, 150 days suspended, a $525 fine and court costs. The court further ordered two years probation and one-year license suspension. As part of probation, Appellant was to obtain a drug and alcohol assessment. Appellant was also ordered to pay fines and costs on the failure to control and failure to stop after an accident charges.

{¶11} This timely appeal followed. Appellant's sentence was stayed pending appeal. Where pertinent, additional facts are set forth below.

ASSIGNMENTS OF ERROR

"I. THE TRIAL COURT UNCONSTITUTIONALLY SHIFTED THE STATE'S BURDEN TO PROVE ALL ELEMENTS OF THE OFFENSE BEYOND A REASONABLE DOUBT TO THE DEFENDANT, ERNEST WALKER, IN VIOLATION OF HIS RIGHT TO DUE PROCESS UNDER THE UNITED STATES AND THE OHIO CONSTITUTIONS.

II. THE TRIAL COURT VIOLATED ERNEST WALKER'S RIGHTS TO DUE PROCESS AND A FAIR TRIAL WHEN IT ENTERED A JUDGMENT OF CONVICTION FOR OPERATING A VEHICLE UNDER THE INFLUENCE OF ALCOHOL AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

III. THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT DENIED ERNEST WALKER'S REQUEST FOR A JURY TRIAL."

{¶12} For ease of analysis, we begin with Appellant's third assignment of error.

STANDARD OF REVIEW

{¶13} As a general rule, the United States Supreme Court has always set high standards of proof for the waiver of constitutional rights. *Johnson v. Zerbst,* 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed.1461 (1938), ("Trial courts must indulge every reasonable presumption against waiver."); *State v. Tackett,* 4th Dist. Jackson No. 04CA12, 2005-Ohio-1437, at ¶ 19. Because of the fundamental importance of the right to a jury trial, the trial court must not lightly infer a waiver of

the right to a jury trial. *Id. See State v. Scott,* 123 Ohio App.3d 331,

704 N.E.2d 265, (2d. Dist. 1997), citing *Tallmadge v. DeGraft-Biney,*

39 Ohio St.3d 300, 301-302, 530 N.E.2d 1310 (1988).

LEGAL ANALYSIS

{¶14} An accused charged with a first-degree misdemeanor is entitled

to a trial by jury. *See* R.C. 2945.17; Section 10, Article I, Ohio Constitution.

*See also State v. Wilson*, 4th Dist. Adams No. 19CA1084, 2019-Ohio-2965,

at ¶ 10. However, in misdemeanor cases, the state does not violate a

defendant's constitutional rights when it conditions the right upon the filing

of a written demand for a jury trial. *See Tackett, supra,* at ¶ 19, citing,

*Mentor v. Giordano,* 9 Ohio St.2d 140, 224 N.E.2d 343 (1967), at paragraph

one of the syllabus. Crim.R. 23 governs the procedure for obtaining or

waiving a trial by jury. *See Tackett, supra,* at ¶ 20. Crim.R. 23 provides, in

relevant part:

> In petty offense cases, where there is a right of jury trial, the defendant shall be tried by the court unless he demands a jury trial. Such demand must be in writing and filed with the clerk of court not less than ten days prior to the date set for trial, or on or before the third day following receipt of notice of the date set for trial, whichever is later. Failure to demand a jury trial as provided in this subdivision is a complete waiver of the right thereto.

{¶15} "The purpose behind Crim.R. 23(A) is to ensure that criminal

defendants do not wait until they have reached the courthouse steps on the

day of trial to demand a jury. This would result in undue delay and expense and possibly prejudice the state." *Tackett, supra,* at ¶ 21, quoting St*ate v. Burton,* 39 Ohio App.3d 151, 151, 530 N.E.2d 955 (6th Dist. 1988). However, "[w]here a request for jury trial is made sufficiently in advance of the actual trial as not to interfere with the orderly administration of the business of the court and will not result in any unnecessary delay or inconvenience to witnesses or prejudice to the state, it may well be an abuse of discretion for the trial court to deny a jury trial." *Tackett, supra,* quoting *State v. Edwards,* 4 Ohio App.2d 261, 266, 208 N.E.2d 758 (4th Dist. 1965), (internal citations omitted.).

{¶16} We begin our analysis by reiterating that Appellant was unrepresented at arraignment. He was brought from the jail with other inmates. It appears that the July 8th pretrial was conducted without his presence, but the record also indicates he was allowed to sign a recognizance bond on that date. Appellant presented to the court on July 22nd, but another attorney substituted for his counsel. Appellant's chief concern appeared to be his confusion regarding the level of his OVI offense. The matter was rescheduled for court trial on September 6th.

{¶17} In his brief, Appellant summarizes these facts, arguing that they culminated in his failure to timely make a written demand for jury trial due to a lack of access to his appointed counsel. The State of Ohio's brief does not address these pretrial facts but focuses solely on Appellant's untimely verbal request for a jury trial on the morning of his September 6th trial. Appellant emphasizes that September 6th was the first time that he and his court-appointed counsel ever appeared in court together.

{¶18} The record reveals that the second pleading in the court's record appears to be a court entry describing the arraignment process, Appellant's not guilty plea, his updated address, the terms of bond, the name of his appointed counsel, and upcoming dates. This entry also contains this language: "Defendant having been fully informed of his rights pursuant to Criminal Rule 5…." Pursuant to Crim.R. 5(A)(5), a court must inform an accused of his right to a jury trial during the accused's initial court appearance. It is mandatory that the court comply with this rule. *See Wilson, supra,* at ¶ 10; (internal citations omitted.) Crim.R. 5(A) applies to criminal charges. For traffic offenses, the corresponding Traffic Rules apply. Traf.R. 8, "Arraignment," contains elements from Crim.R. 5 as well. *See State v. Donkers,* 170 Ohio App.3d 509, 2007-Ohio-1557, 867 N.E.2d 903, at ¶ 30 (11th Dist.). *See also* 1975 Staff Note 1 and 5 to Traf.R. 8.

Similar to the Criminal Rules, the Traffic Rules also require an explanation of rights at the arraignment stage. Traf. R 8(D). "Specifically, before calling the defendant to plea, the judge shall cause him to be informed and shall determine that defendant knows and understands…that he has, where such right exists, a right to jury trial which must be demanded in petty offenses." *Id*. *Donkers, supra*, at ¶ 31.

{¶19} This court most recently considered a defendant's claim that he was unfairly denied a jury trial in a criminal case in *State v. Wilson, supra.* After a bench trial, Wilson was convicted of violation of a protection order, a violation of R.C. 2919.27 and a misdemeanor of the first degree. On appeal, Wilson argued that the trial court erred when it did not inform him that he had a right to a jury trial and was required to make an affirmative demand for a jury if he wanted to exercise that right.

{¶20} In our decision, we recognized that the right to a trial by jury is one of the most important rights guaranteed in the United States Constitution. Our review of the transcript of Wilson's arraignment demonstrated that the trial court did not comply with the Crim.5(A) requirements. Our research led us to an 11th District case, *State v. Bates,* 11th Dist. Ashtabula No. 2005-A-0078, 2006-Ohio-3777, which held under somewhat similar circumstances:

Pursuant to Crim.R. 5(A)(5) the trial court must inform a defendant of his or her right to a jury trial during the initial appearance. *State v. Stewart* 5th Dist. Coshocton No. 01CA002, 2001 WL 1744692, (Nov. 28, 2001), at *2. This court stated that a trial court's failure to inform an accused of his or her rights as required by Crim.R. 5 constitutes prejudicial error. *State v. Fonseca,* 124 Ohio App.3d 231, 234, 705 N.E.2d 1278, (11th Dist. 1997), citing *State v. Orr*, 26 Ohio App.3d 24, 25, 498 N.E.2d 181 (11th Dist. 1985). A trial court's failure to comply with the provisions of Crim.R. 5 invalidates the entire proceeding. *Mentor v. Carter,* 11th Dist. Lake No. 93-L-104, 1994 WL 102394, at 2, citing *Cleveland v. Whipkey,* 29 Ohio App.2d 79, 278 N.E.2d 374 (8th Dist. 1972); *State v. Boerst,* 45 Ohio App.2d 240, 241, 343 N.E.2d 141 (9th Dist. 1973).

*Bates, supra,* at ¶ 22. In *Bates,* a review of the arraignment transcript revealed that the trial court failed to inform Bates, unrepresented at the time, of her right to be tried by a jury, thus failing to comply with Crim.R. 5(A). In *Wilson,* the State conceded that Wilson was not properly advised at the initial appearance regarding his right to a jury trial but argued that because Wilson was later represented, he should be deemed to have waived the issue. We disagreed with the State, concluding:

We readily acknowledge the arguable merit in the appellee's argument that appellant did, in fact, have the benefit of legal representation during the trial court proceedings after his initial appearance and that one could assume that his counsel must have advised appellant of his constitutional right to a trial by jury. However, while this could arguably be a valid assumption in most instances, the right to a trial by jury is one of the most important rights guaranteed in the United States Constitution. Thus, absent actual compliance with Crim.R. 5, or absent some later curative action undertaken by the trial court to affirmatively advise the appellant of his right to a trial by jury,

we are reluctant to simply assume that, sometime during the course of the trial court proceeding, appellant must have been made aware of this important constitutional right. Thus, based upon the facts present in the case sub judice, we are reluctant to conclude that appellant waived this particular constitutional guarantee.

*Id*. at ¶ 14.

{¶21} In another case from this district, *State v. Tackett, supra,* Tackett was convicted of "domestic violence by menacing," a violation of R.C. 2919.25(C). Tackett appealed, asserting as one of his assignments of error, that he did not waive his right to a jury trial. The record revealed at Tackett's arraignment, the court played a videotape that briefly outlined a criminal defendant's legal rights. The videotape explained the right to have a matter tried by a jury and the time requirements for a written demand. The tape concluded by suggesting if a defendant had questions concerning the nature of the charges or the rights at the hearing, the defendant should ask questions when he or she is seated at the counsel table.

{¶22} When Tackett was called, the court inquired as to whether Tackett understood his rights as outlined in the video. Tackett indicated he did. The court then informed Tackett of the range of punishment. Tackett pled not guilty and requested a court-appointed attorney. After some discussion, the court informed Tackett he did not qualify for a court-appointed defender.

{¶23} The court next explained that Tackett's trial would occur within 45 days if he did not waive speedy trial. Tackett asked, "Can it be a jury trial?" The court responded that there was a procedure to be followed, that the procedure was explained on the video, and that Tackett had already affirmed he understood his rights. Tackett replied: "But it didn't say how you go about getting a Jury," to which the court replied, "Oh, yes, it did Sir." Tackett subsequently proceeded to a bench trial and was convicted.

{¶24} Upon review, this Court found that it was not disputed that Tackett did not file a written request for jury trial. However, the record also indicated Tackett did not fully understand this right and the action required to preserve it. The videotape specifically invited defendants to ask questions, and Tackett's later question about a jury trial revealed that he was uncertain about how to obtain one. We observed that the trial court chose to sidestep Tackett's questions rather than directly answer them. We commented that the court appeared to take Tackett's understanding of the videotape to mean that he memorized it.

{¶25} We found that the court's actions did not further the purpose of Crim.R. 23(A). We further found:

> Because the right to a jury trial is a constitutional right and Civ.R. 23(A) is a procedural rule, because the trial court ignored the indicators that Tackett did not fully understand his rights and the steps needed to preserve them, and because the

> trial court did not afford Tackett any latitude with respect to the formal requirements for preserving his rights, we find that the trial court abused its discretion in denying Tackett's request for a jury trial.

*Id*. at ¶ 26.

{¶26} In *Donkers, supra,* the defendant was convicted of various criminal and traffic charges. Initially, she was arraigned in two municipal courts. On appeal, Donkers asserted that the trial courts erred by failing to follow the required procedure upon her initial appearances by not fully advising her of the charges against her and of her rights. At Donkers' arraignments, the state played videos which contained recitations of her constitutional rights.

{¶27} At the outset, the 11th district court acknowledged problems because they did not have a video or a transcript of its contents within the record on appeal. The state countered that providing a record of the arraignment was Donkers' burden on appeal. The appellate court, quoting *State v. Boerst*, 45 Ohio App.2d 240, 241-242, 343 N.E.2d 141 (9th Dist. 1973), noted:

> " '* * * Here, the defendant requested and filed the transcripts, and the reviewing court can determine from such transcripts whether or not an error was committed. We must assume that those transcripts, as certified by the clerk and the trial judge, respectively, are complete and accurate.' "

*Id.* at ¶ 39. The *Donkers* court further observed:

In the case before us, appellant ordered the entire transcript of the proceedings in her case from the dates of the initial appearances. The court reporter certified the submitted transcripts as true and correct. The transcripts of the initial appearances make no reference to a video and do not allude to any previous explanation of rights. If the state insists that there is more content that the court reporter failed to include and that is crucial to their position, the state could have used App.R. 9(E) to correct the record and to submit the video along with a certification that it was played at appellant's initial appearance so that we could judge its contents.

*Id*. at ¶ 40.

{¶28} The *Donkers* court found:

[E]ven if a complying video was played on both dates and if appellant can be confirmed as being present and if the importance of watching it was explained in her presence, a video or other en masse description of rights is merely that—a description of the rights. It does not satisfy the requirement that directs the court to determine that the defendant "understands" the rights listed in Crim.R. 10(C) or "understands and knows" the rights listed in Traf.R. 8(D). These provisions require an individualized inquiry. (Emphasis sic.)

*Id*. at ¶ 42.

{¶29} In Appellant's case, the arraignment hearing transcript reveals that when Mr. Walker's case was called, the trial court inquired about his name and address and inquired as to whether he received a copy of the traffic ticket. The only possible reference to an explanation of Appellant's constitutional rights pursuant to Traf. R. 8(D) is as follows:

Court:          And were you able to hear my general statement that I

                made to everybody in regard to.  [sic]

Appellant:   Yeah, I heard you.

Court:          The arraignment consequences?

Appellant:   Yes.

{¶30} The trial court did not ask Appellant if he had any

questions about the "general statement."  It is at this point that the trial court

began to read through the nature of the four charges; explained the potential

penalties; took Walker's not guilty plea; discussed Walker's request for a

court-appointed attorney; and discussed the terms of his bond.  At the end of

all of this discussion, the trial court asked, "Mr. Walker do you have any

questions about what has happened here"?

{¶31} While the record does not indicate Appellant herein was a first-

time visitor to the Adams County Court, we cannot conclude, based on these

facts, that Appellant was properly advised as to his right to a jury trial and

how to make a timely demand pursuant to Crim.R. 23.  We assume that the

"general statement of arraignment consequences" was the trial court's

explanation of Appellant's constitutional rights but we cannot confirm that.

The arraignment transcript simply does not provide this information.  "While

the defendant does have the burden of seeing that the record is complete,

under the appellate rules, he can do no more than request the clerk to prepare and forward the transcript of docket and journal entries, and the transcript of proceedings." *Boerst, supra,* at 242. While a full explanation of the constitutional rights pursuant to Crim.R. 5(A) may well have occurred, the arraignment transcript does not contain this discussion.

{¶32} Based on our review of the record, we find Appellant was not fully apprised of his right to a jury trial and of the requirements, pursuant to Crim.R. 23(A), to timely demand one in writing. We acknowledge the record does contain a "Notice of Trial, Pretrial, Etc.," dated July 2nd, with Appellant's signature, and several documents indicate Appellant's being scheduled for a "court trial." However, we cannot simply assume Appellant understood "court trial" to mean "trial to the bench" or "trial to the judge."

{¶33} Further, as in *Wilson,* we cannot simply assume because Appellant was later appointed a lawyer that he must have been fully informed of this important constitutional right, particularly in light of the lack of access to his lawyer which he claims and the record supports. Assuming Appellant was properly apprised pursuant to Crim.R. 5(A), it does not appear the trial court inquired as to whether Appellant had any questions about his constitutional right to trial. Under the circumstances of

Appellant's case, we find the trial court abused its discretion in denying

Appellant's request.  We sustain the third assignment of error. [2]

{¶34} In light of our disposition of Appellant's third

assignment of error, Appellant's first and second assignments of error are

rendered moot.  Accordingly, the judgment of the Adams County Court is

reversed and the matter is remanded for further proceedings consistent with

this opinion.

**JUDGMENT REVERSED.**

---

[2] We recognize that many courts in the 4th District utilize general statements and/or videos to inform multiple defendants of their constitutional rights at arraignment.  Our decision here does not find that practice to be improper.  In fact, this decision could very possibly have been resolved in favor of Appellee had we been supplied with a record of the trial court's "general statement" of Defendant/Appellant's rights at arraignment.

## **JUDGMENT ENTRY**

It is ordered that the JUDGMENT BE REVERSED and that the CAUSE IS REMANDED. Appellee shall pay the costs.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Adams County Court to carry this judgment into execution.

IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted. The purpose of a continued stay is to allow Appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty-day period, or the failure of the Appellant to file a notice of appeal with the Supreme Court of Ohio in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio. Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of sixty days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Abele, J. and Hess, J. concur in Judgment and Opinion.

For the Court,

_____
Jason P. Smith
Presiding Judge

## **NOTICE TO COUNSEL**

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**